## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**SARAH UNDERWOOD**                                                          **PLAINTIFF**

**v.**                                                          **Civil No. 1:18cv24-HSO-JCG**

**MISSISSIPPI DEPARTMENT OF
CORRECTIONS, PELICIA HALL,
BRYAN SCOTT DAVIS, BEN WHITE**                                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MISSISSIPPI DEPARTMENT OF CORRECTIONS, PELICIA HALL, AND BEN WHITE'S MOTION [58] FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendants Mississippi Department of Corrections, Pelicia Hall, and Ben White's Motion [58] for Summary Judgment. The Court finds that the Motion should be granted in part as to Plaintiff Sarah Underwood's claims for disability discrimination and retaliation against Defendants Mississippi Department of Corrections, Pelicia Hall, and Ben White and her claims for defamation and sex discrimination based upon a hostile work environment against Defendant Ben White. These claims will be dismissed. Because no pending claims remain against Defendant Ben White, he will also be dismissed as a Defendant from this suit.

The Motion will be denied in part in all other respects, and Plaintiff's claims for sex discrimination based upon a hostile work environment against Defendant Mississippi Department of Corrections under Title VII and against Defendant Pelicia Hall under 42 U.S.C. § 1983 in her official capacity will proceed.

## I. <u>BACKGROUND</u>

A.   <u>Factual background</u>[1]

Plaintiff Sarah Underwood ("Underwood" or "Plaintiff") was employed as a Field Worker for Defendant Mississippi Department of Corrections ("MDOC").  First Am. Compl. [12] at 2.  As part of her job, she helped monitor offenders' compliance with the conditions of their probation or parole.  *Id.*  From September 27, 2016, until October 30, 2016, Underwood's coworker, senior probation officer Bryan Scott Davis ("Davis"), sent her numerous text messages stating that he had feelings for her and harassing her.  Pl. Ex. 10, Pl. Dep. [66-10] at 12-13; Pl. Ex. 3, Initial Incident Report [66-3] at 8-25.  Underwood alleges that Davis also grabbed her and hugged her while they were alone in a car together on October 21, 2016.  Pl. Ex. 1, Davis Disciplinary Documents [66-1] at 3.

On October 26, 2016, Underwood informed her supervisor, Defendant Ben White ("White"), that Davis's behavior had changed and she thought White should be aware of it.  Pl. Ex. 3, Initial Incident Report [66-3] at 2.  Following this conversation, Davis's harassment continued and, consequently, Underwood reported Davis's text messages to White on October 30, 2016.  *Id.* at 1-5; Pl. Ex. 10, Pl. Dep. [66-10] at 13.  Davis was transferred to another office on October 31, 2016, Pl. Ex. 10, Pl. Dep. [66-10] at 13, and MDOC commenced an investigation into Underwood's allegations, Pl. Ex. 1, Davis Disciplinary Documents [66-1].  As a result of the investigation Davis was permanently reassigned to a new office and was suspended

---

[1] All facts and inferences are presented in the light most favorable to Plaintiff, the nonmoving party. *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

for 15 days without pay.  *Id.* at 16-17.   He was also ordered by MDOC to have "no contact" with Underwood, but he was not expressly forbidden from discussing her report of harassment with other employees, nor was he provided with instructions not to retaliate against her.  Pl. Ex. 8, Davis Dep. [66-8] at 11-12.  Underwood alleges that because of these deficiencies in MDOC's handling of the situation, Davis continued his harassment by sharing information about her and the report she had made with coworkers.  Mem. in Opp'n [67] at 6.

Specifically, Davis allegedly told coworkers that Underwood was attempting to get him fired and to "watch out" for her, Pl. Ex. 1, Davis Disciplinary Documents [66-1] at 7-8; Pl. Ex. 8, Davis Dep. [66-8] at 16-17, informed them about the consequences he suffered due to Underwood's allegations, Pl. Ex. 8, Davis Dep. [66-8] at 17, and claimed that she had texted pictures to him of herself in her underwear, *id.* at 9; Pl. Ex. 4, Emails Reporting Harassment [66-4] at 2; Pl. Ex. 5, Davis Emails [66-5] at 1.  Davis testified in his deposition that he could not remember how many people he talked to about Underwood because "[w]hen you're angry, you just don't know . . . [w]hen you're upset about something, you don't know who you talked to."  Pl. Ex. 8, Davis Dep. [66-8] at 9.  He added that "everybody knows by now," about Underwood's allegations and that "everybody that I've talked to thinks it's unfair . . . they just think it's wrong."  *Id.* at 10.

Underwood claims that following her report to White, her coworkers stopped talking to her, and although White continued to speak with her it was only regarding work-related matters.  Pl. Ex. 10, Pl. Depo. [66-10] at 51-52.  Underwood

3

reported this as continuing harassment, stating that "I have to work with these people and [Davis] has made this a hostile environment for me since I reported his harassment."  Pl. Ex. 4, Emails Reporting Harassment [66-4] at 2.  White and MDOC assert that they asked employees to stop discussing Underwood and the harassment with others in the office.  Pl. Ex. 2, MDOC Dep. [66-2] at 17; Pl. Ex. 11, White Dep. [66-11] at 12-13.  However, the summary judgment record does not contain any evidence indicating what, if any, additional action Defendants took to ameliorate the alleged retaliation.  Pl. Ex. 2, MDOC Dep. [66-2] at 6, 17-18.

Underwood also contends that her coworkers and offenders whom she supervised manufactured instances of misconduct on her part to report to White, which he included in incident reports to his superiors.  Pl. Ex. 10, Pl. Dep. [66-10] at 14.  One such incident involved an occasion following Underwood's initial report to White when Davis told White that Underwood had overdosed on Adderall and Lortab.  Pl. Ex. 5, Davis Emails [66-5] at 3.  White included this in an incident report to his superiors.  *Id.*

Underwood claims that she was also written up after one of the parolees she supervised was shot, Pl. Ex. 10, Pl. Dep. [66-10] at 14-16, and again following an incident where a parolee informed her that she did not have to appear in court when she was in fact required to do so, *id.* at 16; Pl. Ex. 6, Incident Reports [66-6] at 4.  Underwood alleges that White also wrote her up for inappropriately texting and having sex with offenders and for allegedly receiving funds from a parolee.  Pl. Ex. 6, Incident Reports [66-6] at 4, 23.  White's actions in writing these incident reports

4

form the basis for both her hostile work environment claim and her retaliation claim against White.  Mem. in Opp'n [67] at 16, 21.

Finally, in September 2017, Underwood was informed that she was no longer permitted access to the Pearl River County Jail.  *Id.* at 20.  Specifically, after information was reported to the Pearl River County Sheriff's Department about an incident concerning Underwood, the Sheriff sent MDOC a letter advising that Underwood was not permitted to enter the jail or to have contact with individuals incarcerated there pending the conclusion of the investigation.  *Id.* at 19.  On October 2, 2017, Underwood was placed on temporary duty in Stone County.  Pl. Ex. 10, Pl. Depo. [66-10] at 20.  While at Stone County, she received a telephone call in which she was informed that rumors were circulating that she had had sexual relations with an incarcerated individual.  First Am. Compl. [12] at 5.  A Stone County coworker reported to her that the supervisor at Stone County had stated that Underwood "was moved there to be punished and is dating an offender."  Pl. Ex. 7, Stewart Decl. [66-7] at 1.  On January 2, 2018, Underwood was again moved, this time to the office in Hancock County where she resides.  Pl. Ex. 10, Pl. Depo. [66-10] at 22.

Underwood filed an EEOC charge on June 9, 2017, detailing Davis's sexual harassment, the continuing harassment from her coworkers, and what she believed was subsequent retaliation.  Pl. Ex. 12, EEOC Record [66-12] at 5-6.  She amended this charge on October 24, 2017, to include additional evidence of retaliation and discrimination.  *Id.* at 10-11.  Underwood was issued a right to sue letter as to her

first charge on October 20, 2017. *Id.* at 1.

B.    Procedural history

Plaintiff filed this suit on January 19, 2018, against Defendants MDOC, Pelicia Hall ("Hall"), Davis, and White. Compl. [1]. Hall, who is sued in her official capacity, was the Commissioner of MDOC. Plaintiff filed a First Amended Complaint [12] against Defendants on May 2, 2018, which advances claims under Miss. Code Ann. § 25-9-149, the Rehabilitation Act, 29 U.S.C. §§ 701 – 795, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12213 ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e – 2000e-17, state defamation law, and 42 U.S.C. § 1983, all arising out of sexual harassment and retaliation Plaintiff allegedly experienced during her employment with MDOC. *Id.* at 6-8.

Defendants MDOC, Hall, and White (collectively, "Defendants") have filed a Motion [58] for Summary Judgment, asserting that Plaintiff's claims against them should be dismissed. Plaintiff has filed a Response [66] in Opposition, in which she agrees to dismiss Count 2 of the First Amended Complaint which raises claims for disability discrimination and failure to accommodate under the Rehabilitation Act and ADA. Opp'n to Summ. J. [66] at 1. The Court will dismiss Count 2 based upon Plaintiff's decision to forego pursuing it and will limit its consideration of Defendants' Motion to the remaining five claims against Defendants MDOC, Hall, and White.

Specifically, Count 1 advances a claim for discrimination under Mississippi Code §25-9-149 against MDOC, Hall, White, and Davis. Counts 3 and 4 advance

claims against MDOC for Title VII sex discrimination based upon a hostile work environment and retaliation.  Count 5 raises state-law defamation claims against White and Davis, while Count 6 brings a claim pursuant to 42 U.S.C. § 1983 against Hall, White, and Davis for violating the Equal Protection Clause of the Fourteenth Amendment through sex discrimination based upon a hostile work environment and retaliation.

Defendants have filed a Rebuttal [68] in which they argue that some of the claims and facts Underwood includes in her Response to Defendants' Motion for Summary Judgment are new and were not alleged in her First Amended Complaint. Rebuttal [68] at 1.  They maintain that "Underwood seeks to completely transform her cause, raising completely different allegations and legal theories in place of what is set forth in her Complaint, as amended." *Id.*  Specifically, Defendants allege that Underwood has changed the crux of her allegations to be that Defendants MDOC and White failed to stop the harassment Underwood experienced at the hands of Davis and others.  *Id.*  Defendants also argue that, for the first time in her Response, Underwood asserts that White defamed her by forwarding complaints made about her by Davis and others to his superiors.  *Id.*

## II. <u>DISCUSSION</u>

### A. <u>Summary judgment standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.    Plaintiff's purportedly new allegations raised in opposition to summary judgment

1.    Underwood's allegation that Defendants failed to stop harassment by Davis and other coworkers

The First Amended Complaint alleges in the introductory paragraph that "[t]he Department did not take adequate steps to prevent or cure the harassment – nor prevent the retaliation which followed."  First Am. Compl. [12] at 1. Underwood's emphasis in her Response on the failure of Defendants to stop the

harassment she faced is thus not a complete transformation of her cause of action. *See id.* While her Response contains more detailed facts than those alleged in the First Amended Complaint, Underwood's claims appear to arise out of and directly relate to her claims in the First Amended Complaint that Defendants failed to prevent the harassment and retaliation she experienced.

First, Defendants assert that Underwood's claims about Davis's conversations with coworkers about her internal complaint and his own innocence are "new." While Underwood may have learned more factual detail about these conversations through discovery and expanded upon them in her Response, the First Amended Complaint alleges that after Underwood reported Davis's conduct, he "called some of Plaintiff's coworkers and bosses and told them Plaintiff was trying to get them fired and to 'watch out' for Plaintiff." First Am. Compl. [12] at 3. These allegations are not wholly removed from conversations discussing Underwood's harassment complaint or Davis's professed innocence, and appear to the Court to stem directly from them. The First Amended Complaint reflects that Underwood was aware that these conversations had taken place and that they affected how her coworkers behaved towards her, although she might not have known all of the content of such conversations. *Id.* The allegations in Underwood's Response are therefore not "new" as they pertain to Davis's conversations with their coworkers.

Defendants further contend that they cannot be held liable for a hostile work environment based upon conduct of which they were not aware. Rebuttal [68] at 5.

This ignores the fact that Underwood reported internally to White, the staff attorney handling the initial investigation, and later to the EEOC that Davis was discussing the case with coworkers and his actions were creating a hostile work environment.  Pl. Ex. 4, Emails [66-4] at 2, 4-5.

Defendants also object to Underwood's assertions in her Response regarding incidents involving Doris Bonhomme, Matthew King, and James Burch.  Rebuttal [68] at 5.  Doris Bonhomme ("Bonhomme") and Matthew King ("King") were offenders who accused Underwood of stealing, sending inappropriate text messages, and revealing confidential information.  Pl. Ex. 6, Incident Reports [66-6] at 4, 11-18, 23.  James Burch ("Burch") was an agent working with MDOC who reported that Underwood engaged in misconduct.  *Id.* at 11-13.  The First Amended Complaint alleged that Underwood "was written up for issues that were not true . . . ."  First Am. Compl. [12] at 4.  While many of the surrounding circumstances regarding these individuals are not relevant considerations in resolving the present Motion, insofar as the allegations were included in incident reports which were later investigated and found to be untrue, Underwood sufficiently pleaded this in her Complaint.  *See* Pl. Ex. 6., Incident Reports [66-6]; First Am. Compl. [12] at 3-4.  The First Amended Complaint plainly alleges that Underwood was being written up unnecessarily for conduct that was untrue.  First Am. Compl. [12] at 3-4.  These are not new allegations and may be considered in opposition to Defendants' summary judgment motion.

2.   <u>Defamation</u>

Defendants next argue that Underwood's arguments in her Response in support of her defamation claim against White are novel, as the First Amended Complaint does not raise an allegation that White defamed Underwood by forwarding complaints made about her to superiors.  Rebuttal [68] at 1.  While the First Amended Complaint does assert that Underwood "was written up for issues that were not true," this allegation was not the basis for the defamation claim.  *See* First Am. Compl. [12] at 4, 7.  Instead, Underwood alleged that White defamed her only by instructing "local law enforcement personnel not to divulge information to Plaintiff and falsely stated that she was untrustworthy."  *Id.* at 6-7.  She further asserted that "White . . . engaged in further actions of defamation, known and unknown at present."  *Id.*

Underwood's Response contends that White reported and repeated an incarcerated individual's statements that she was "in a gang, sleeps with offenders, uses meth, sleeps with CID investigators to avoid discipline, and abuses her authority for criminal purposes."  Mem. in Opp'n [67] at 22-23.  White also purportedly forwarded to his supervisors an allegation Davis made about Underwood's drug usage and an offender's claim that she stole money from the offender.  *Id.* at 23.  Underwood also asserts that White authored an incident report which "recited lies on which PRC based their decision to ban Underwood from the jail."  *Id.*  These claims in Underwood's Response do not appear related to the allegation that Defendant White said she was untrustworthy or that he requested

that information not be divulged to her, and they constitute entirely new allegations raised for the first time in Response to summary judgment.

There are two lines of cases in the Fifth Circuit addressing whether a claim raised for the first time in response to a motion for summary judgment is properly before the Court. *Williams v. BFI Waste Servs., LLC*, No. 3:16CV75-DPJ-FKB, 2017 WL 1498230, at *2-3 (S.D. Miss. Apr. 24, 2017) (collecting cases). Those cases finding that dismissal was proper where a response to a motion for summary judgment relied on new theories of liability or factual allegations based that finding on the fact that the complaint did not provide "fair notice of what the claim is and the grounds upon which it rests." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)). This rule has been applied to cases where new factual allegations to support previously pleaded legal theories were raised only in response to summary judgment. *See, e.g., id.*; *see also Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (affirming refusal to consider new factual theory); *Clark v. Gen. Motors*, No. 3:14cv505-DPJ-FKB, 2016 WL 3574408, at *6 (S.D. Miss. June 23, 2016).

However, in other instances, the Fifth Circuit has held that courts should construe new theories in a summary-judgment response as a motion to amend. *See, e.g., Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008). "This [rule] is particularly true where . . . the litigant is pro se and has not yet made any amendments to her complaint," *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335,

341 (5th Cir. 2010), but it has also been applied to represented parties, *see Stover*, 549 F.3d at 989 n.2.

The situation here is more similar to the first line of cases, where a new factual theory is raised in response to a motion for summary judgment.  The Local Rules applicable in the Southern District of Mississippi do not recognize motions located within a response; these must be docketed separately.  L. U. Civ. R. 5(b)(3)(C).  Further, in light of the fact that Underwood is a represented party and has already amended her pleadings once, the Court finds that her new factual theory regarding White's defamatory actions, raised for the first time in her Response to summary judgment, should not be considered.

Having addressed which arguments are and are not properly before it on summary judgment, the Court turns to the merits of Defendants' Motion.

C.    <u>Count 1 – claims for violation of Mississippi Code § 25-9-149 (MDOC, Hall, and White)</u>

The First Amended Complaint advances a claim against Defendants for discrimination under Mississippi Code § 25-9-149.  First Am. Compl. [12] at 6.  The parties agree that if a private cause of action exists for discrimination under state law, then the same facts used to support a Title VII discrimination claim are used to show a violation of the state statute.  Mem. in Supp. [59] at 8; Mem. in Opp'n [67] at 27.  The parties disagree on whether the statute creates a private right of action. Mem. in Supp. [62] at 7-8; Mem. in Opp'n [67] at 25-27.

Mississippi Code § 25-8-149 states that:

It is the intent of the Legislature that no person seeking employment in

state service, as defined in Section 25-9-107, Mississippi Code of 1972, or employed in state service, as defined in Section 25-9-107, Mississippi Code of 1972, shall be discriminated against on the basis of race, color, religion, sex, national origin, age or handicap.

Miss. Code. Ann. § 25-9-149.

Courts which have considered this statute have not addressed the specific question of whether it creates a private right of action, but they have applied the analytical framework employed in Title VII cases to evaluate the merits of the claims. *See Emp't Sec. Comm'n v. Collins*, 629 So. 2d 576, 581 (Miss. 1993) (noting that "this section has not been interpreted by this Court or any other Mississippi court and thus provides no analytical framework for determining instances of discrimination," and then using federal law to analyze the discrimination claim); *Kirk v. Dep't of Pub. Safety*, 235 So. 3d 144, 152 (Miss. Ct. App. 2017) (stating that § 25-9-149 prohibits discrimination and then only addressing the plaintiff's Title VII claims); *Ernest Ward v. Dep't of Corr.*, No. 3:13CV254-DPJ-FKB, 2015 WL 5125606, at *7 (S.D. Miss. Sept. 1, 2015) (finding it unclear if § 25-9-149 provides a cause of action but dismissing the claim for failure to pursue or, alternatively, for the same reasons it dismissed the plaintiff's Title VII claims).

Mississippi state courts confronted with this question seem to have implicitly recognized a cause of action by resolving the merits of the claims using a federal standard without directly addressing whether a cause of action exists. *See Collins*, 629 So. 2d at 581 ("This statutory provision clearly prohibits discrimination in state employment based on age or handicap . . . there is no Mississippi case law which addresses the requirements for proving discrimination."); *see also Kirk*, 235 So. 3d

14

at 152 ("Mississippi law also prohibits intentional discrimination against a state service employee because of the employee's gender.").

The Court will follow the approach adopted by the state courts to have considered this statute and will apply the Title VII framework to analyze Plaintiff's discrimination claims. Because, as the Court concludes hereafter, Underwood has submitted sufficient evidence to survive summary judgment on her Title VII claims for sex discrimination based upon a hostile work environment, her state-law claims will be permitted to proceed to the same extent.

D.   Counts 3, 4, 6 – Title VII and 42 U.S.C. § 1983 claims (MDOC, Hall, and White)

Plaintiff advances Title VII claims against MDOC for sex discrimination based upon a hostile work environment and for retaliation. First Am. Compl. [12] at 6-7. Specifically, Underwood contends that she was subjected to a hostile work environment based upon her sex and was retaliated against for reporting that discrimination. *Id.* at 6-8. She asserts claims pursuant to 42 U.S.C. § 1983 against Hall in her official capacity for injunctive relief, and against White in his individual capacity for violating her right to equal protection secured by the Fourteenth Amendment by discriminating and retaliating against her. *Id.* at 8.

"When a § 1983 claim is used as a parallel to a Title VII claim under a given set of facts, the elements required to be established for each claim are deemed the same under both statutes." *Merwine v. Miss. Bd. of Tr.*, 754 F.2d 631, 635 n.3 (5th Cir. 1985). Because this is the case here, Underwood's § 1983 and Title VII claims in Counts 3, 4, and 6 will be analyzed utilizing the same framework.

When evaluating Title VII claims at the summary judgment stage, courts employ a three-part, burden-shifting formula. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). First, a plaintiff must establish a prima facie case of discrimination or retaliation. *Id.* If she can successfully do so, the burden shifts to the defendant to rebut the plaintiff's case by demonstrating a "legitimate, nondiscriminatory justification for [their] actions." *Id.* If the defendant can offer such a justification, the burden shifts back to the plaintiff, who must then show that the defendant's proffered reason is a pretext for discrimination or retaliation. *Id.* With this framework in mind, the Court will first evaluate Underwood's claims for sex discrimination based upon a hostile work environment, before turning to her retaliation claims.

1. <u>Underwood's claim for sex discrimination based upon a hostile work environment (Count 3 against MDOC and Count 6 against Hall and White)</u>

To state a prima facie case of discrimination based upon a hostile work environment, a plaintiff must show: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

There can be no dispute that Plaintiff, a female, is a member of a protected class. *See Sumrall v. Boeing Co.*, No. CIV.A.103CV905WJGJMR, 2005 WL 1523378, at *10 (S.D. Miss. June 28, 2005) (noting that there was no question the

16

female plaintiff alleging sex discrimination was a member of a protected class).  The parties also do not contest the second and fourth elements, in that they agree that viewing the facts and construing all ambiguities in the light most favorable to Underwood, material fact questions exist as to whether the harassment was unwelcome and whether it affected a term, condition, or privilege of Underwood's employment.  *See* Mem. in Supp. [59] at 12-13; Mem. in Opp'n [67] at 15-16; Rebuttal [68] at 3-6.  Only the third and fifth elements are at issue.

    a. Whether the harassment was based on sex (third element)

    Neither party argues that Davis's text messages and his treatment of Underwood prior to her internal complaint were not based upon her sex.  *See* Mem. in Supp. [59]; Mem. in Opp'n [67]; Rebuttal [68].  Defendants dispute that the remaining allegations about Davis's conduct, including him telling coworkers that Underwood was attempting to get him fired or to "watch out" for her, Pl. Ex. 1, Davis Disciplinary Documents [66-1] at 7-8; Pl. Ex. 8, Davis Dep. [66-8] at 16-17, informing Underwood's coworkers of the consequences he suffered due to her allegations, Pl. Ex. 8, Davis Dep. [66-8] at 17, and relaying to them that she had texted pictures to him of herself in her underwear, *id.* at 9; Pl. Ex. 4, Emails Reporting Harassment [66-4] at 2; Pl. Ex. 5, Davis Emails [66-5] at 1, were based upon Underwood's sex.  Underwood counters that these comments to others were based both upon her sex for spurning Davis's advances, and upon a retaliatory motive on the part of Davis.  Mem. in Opp'n [67] at 15-16.

    The "critical issue" in determining whether workplace conduct constituted

17

harassment based upon sex is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Reine v. Honeywell Int'l Inc.*, 362 F. App'x 395, 397 (5th Cir. 2010) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). "Title VII is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981). Although it is not always the case,

> [c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex.

*Oncale*, 523 U.S. at 80.

Underwood has brought forth sufficient evidence to create a material fact question at the summary judgment stage that Davis's telling coworkers that Underwood sent him pictures of herself in her underwear was based upon sex. This conduct involves the implicit proposal that Underwood was involved, or was attempting to become involved, in some sort of sexual activity with Davis. A reasonable jury could conclude that Davis would not have engaged in the same conduct had Underwood not been a member of the opposite sex. This is sufficient at the summary judgment stage.

### b. Whether Defendants failed to take prompt remedial action (fifth element)

Defendants argue that the fifth element of a hostile work environment claim is not met because they took prompt remedial action after learning of Underwood's

complaints about Davis. They point out that they immediately transferred Davis, investigated the incident, suspended Davis without pay, and permanently reassigned him to a position in a different location from Underwood. Mem. in Supp. [59] at 13. Defendants further assert that the later conduct Underwood describes as unwelcome harassment, such as the false reports, the rumors that Davis allegedly spread about her, and her involuntary transfers, were not "because of sex." Rebuttal [68] at 5. Further, MDOC asserts that even if it did fail to take prompt remedial action in response to Davis's later conduct, this was supported by a legitimate reason in that it would have been a harmful policy to discipline employees for reporting what they perceived to be misconduct in the workplace. *Id.* at 6.

Underwood counters that MDOC did not take sufficient remedial action because, although it transferred Davis, issued a 15-day suspension, and required him to stop contacting her, it did nothing to stop the other harassment that persisted, such as the false reports and rumors, even after she informed MDOC. Mem. in Opp'n [67] at 16-18. Similarly, Underwood argues that White did not take sufficient remedial action because he knew of the ongoing harassment but included the false rumors in reports to superiors, and he failed to discipline any of the individuals engaged in the harassment even after he was instructed by MDOC to "make them stop." Mem. in Opp'n [67] at 18.

A defendant employer may avoid liability for harassment if it takes "prompt remedial action" to protect the claimant. *Williams-Boldware v. Denton Cty.*, 741

F.3d 635, 640 (5th Cir. 2014). This is a fact-specific inquiry and "not every response by an employer will be sufficient" to absolve the employer of liability under Title VII. *Id.* (quoting *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004)). "An employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not reasonably calculated to halt the harassment." *Id.* (quoting *Hockman*, 407 F.3d at 329). In determining whether an employer's actions were sufficiently remedial, the Fifth Circuit has considered whether the offending behavior in fact ceased. *Id.* (quoting *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999)).

Taking the summary judgment evidence and construing the facts in the light most favorable to Underwood, a jury could conclude that although MDOC did take some prompt remedial action by transferring Davis, temporarily suspending him, and directing him to stop contacting Underwood, it did not prohibit him from discussing the incident with others, leading to further alleged harassment. *See* Pl. Ex. 8, Davis Dep. [66-8] at 11-12. Davis in fact discussed the situation with coworkers, telling them that Underwood sent him pictures of herself in her underwear and that Underwood made false reports of sexual harassment against him and other coworkers. *See id.* at 9, 16-17. Even after Underwood reported this conduct, White and MDOC apparently took no steps to investigate it, discipline Davis for persisting in it, or provide additional training on sexual harassment policies. Pl. Ex. 2, MDOC Dep. [66-2] at 6, 17-18. White, at MDOC's direction, instead asked employees to "stop talking about each other and things that you don't

20

know to be true." Pl. Ex. 2, MDOC Dep. [66-2] at 17.  This instruction was given to employees a "couple of times" during the period between October 2016 and December 2017, although the exact dates and number of times is not clear.  *Id.*

Also during this time, White submitted incident reports with information given to him by Underwood's coworkers and by offenders who reported about Underwood texting images to an offender, her attempting to become sexually involved with the offender, and her allegedly sleeping with offenders and investigators.  Pl. Ex. 6, Incident Reports [66-6] at 4, 11-13.  Viewing the facts in the light most favorable to Underwood, as the Court must at this stage, a jury could conclude that the actions MDOC took were not reasonably calculated to stop the harassment.  *See id.*[2]

White is sued in his individual capacity under § 1983, but it is unclear whether Underwood is attempting to hold White liable in his supervisory capacity or for his own individual actions in forwarding incident reports to his superiors.  *See* First Am. Compl. [12] at 4.  As for the latter, the record evidence reveals no material dispute that White only prepared the incident reports and forwarded them to his superiors.  Pl. Ex. 11, White Dep. [66-11] at 27.  He did not attest to their truthfulness or make any representations as to his belief in the accusations.  *Id.* Nor is there any evidence indicating that, aside from his reports, White repeated any of these accusations to anyone.  There is no indication that White's actions in

---

[2] Because she alleges a continuing harm, Underwood may maintain her claim against Hall to the extent Hall may be sued in her official capacity for prospective injunctive relief under § 1983.  *See Nelson v. University of Tex.*, 535 F. 3d 318, 322 (5th Cir. 2008) ("[P]rospective injunctive or declaratory relief against a state [official] is permitted . . . .").

forwarding the reports were based upon sex, nor that they rose to the level required to state a claim for a hostile work environment.  To the extent Plaintiff raises this claim against White for his actions as an individual, it should be dismissed.

It is possible that Plaintiff is instead attempting to assert a supervisory liability claim under § 1983.  However, "Section 1983 does not create supervisory or respondeat superior liability," *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)), and such an allegation cannot form the basis of a claim against White under § 1983.

Because material fact questions remain for trial on Underwood's sex discrimination claim based upon a hostile work environment set forth against MDOC in Count 3 and against Hall in her official capacity in Count 6, summary judgment would not be appropriate.  However, summary judgment is appropriate on Underwood's claim against White in Count 6 for sex discrimination claim based upon a hostile work environment.

2.    Underwood's retaliation claim (Count 4 against MDOC and Count 6 against White and Hall)

Underwood alleges that Defendants retaliated against her after she filed her internal complaint of sexual harassment.  First Am. Compl. [12] at 7.  To establish a prima facie case of retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).  The parties do not dispute that Underwood engaged in a protected activity when she

complained to White of Davis's conduct.  Mem. in Supp. [59] at 15.  However, the Court concludes that Underwood cannot establish the second element, that she suffered an adverse employment action.

Underwood asserts that after she lodged her internal complaints, she was "written up for issues that were not true," and for issues for which Defendants did not discipline other employees.  First Am. Compl. [12] at 4.  "Everything Plaintiff did was being closely audited to find anything wrong."  *Id.*  This included being written up for an alleged drug overdose, for allegedly being in a gang, for "informing" to incarcerated persons, and for purportedly having sex with incarcerated persons and CID investigators.  Mem. in Opp'n [67] at 20.  Underwood also claims that she suffered from adverse employment action in that rumors were spread that she sent pictures to Davis and that she "set him up" or treated him unfairly.  *Id.*  She further maintains that being banned from the Pearl River County Jail and being transferred to another county constituted adverse employment actions.  *Id.*

To establish an adverse employment action at the prima facie stage of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).  A reasonable employee is the average person in similarly situated circumstances.  *Id.* at 271.

In *Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, 535 F. App'x 348, 352 (5th Cir. 2013), the plaintiff alleged various actions by coworkers which she asserted amounted to retaliation.  The Fifth Circuit found that these actions, which included stares, whispers, not being cordial, and reporting her for conduct such as wearing earrings on an operating room floor, were insufficient to establish an adverse employment action.  *Id.*  The Fifth Circuit has also determined that a plaintiff who was excluded from a training lunch, subjected to disciplinary write-ups, and micro-managed did not suffer from a materially adverse action.  *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007).  In a separate case, it has held that a coworker maliciously talking about the plaintiff and causing others to treat her less cordially were not materially adverse employment actions.  *Stingley v. Den-Mar Inc.*, 347 F. App'x 14, 19 (5th Cir. 2009).

Here, even taking Underwood's allegations as true, under Fifth Circuit precedent the actions of which she complains would be insufficient to show that she experienced a materially adverse employment action.  Underwood contends that she was written up unnecessarily, that her coworkers began to behave differently towards her, and that rumors were spread about her.  Mem. in Opp'n [67] at 20.  Prior decisions have found that such actions do not rise to the level necessary to show a materially adverse employment action for purposes of a retaliation claim.  *See Stingley*, 347 F. App'x at 19; *Earle*, 247 F. App'x at 524.

Turning to her ban from the Pearl River County Jail, even if this action was materially adverse, the summary judgment record reveals that this was not

24

something that MDOC, Hall, and White controlled.  While Underwood alleges that the ban was imposed on instruction from White, the competent summary judgment evidence shows that the Pearl River County Sheriff's Department began an investigation into Underwood on its own initiative, without any involvement from White.  Def. Ex. 9, Sheriff's Letter [58-9] at 1.  Indeed, Underwood could not point to any evidence during her deposition to support her allegation that White precipitated the ban.  Pl. Ex. 10, Pl. Dep. [66-10] at 20.  Because MDOC, Hall, and White did not have control over the ban and it was initiated by a third party, this cannot qualify as an adverse employment action taken by Underwood's *employer*. *See McCoy*, 492 F.3d at 556-57 (emphasis added).

Finally, Underwood alleges that her temporary transfer to Stone County was a materially adverse employment action.  First Am. Compl. [12] at 5.  "[A] lateral reassignment to a position . . . could amount to a materially adverse action in some circumstances."  *Stewart v. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009). Assuming this transfer was materially adverse, MDOC asserts that the rationale behind it was for a legitimate and non-retaliatory reason.  Specifically, because Underwood had been banned from the Pearl River County Jail and was not able to perform her job at that location, the transfer was necessary.  Rebuttal [68] at 8. Even though Stone County was farther from her home, Underwood was later reassigned to a permanent duty station in her home county, Hancock.  Pl. Ex. 10, Pl. Dep. [66-10] at 84.  Plaintiff has not cited any competent summary judgment evidence sufficient to show that MDOC's rationale for transferring her due to the

ban was pretextual.  She has therefore not shown that this was an action taken as a form of retaliation.

Because Plaintiff cannot show that she experienced an adverse employment action, her retaliation claims against MDOC, Hall, and White cannot withstand summary judgment.

E.     Count 5 – State-law defamation claim (White)

Underwood's arguments in her Response to Summary Judgment regarding her state-law defamation claim against White all arise out of the allegedly false incident reports that he "passed along."  Mem. in Opp'n [67] at 22-24.  As the Court has already determined, this factual theory was advanced for the first time in Response to summary judgment, and will not be considered.  *Cutrera v. Bd. of Sup'rs*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court").

Underwood has not otherwise expanded upon her original claim for defamation as alleged in the First Amended Complaint, namely that White defamed her by instructing "local law enforcement personnel not to divulge information to Plaintiff and falsely stated that she was untrustworthy."  First Am. Compl. [12] at 6-7.  In considering whether Plaintiff has pleaded enough to withstand summary judgment on her defamation claim, the Court recognizes that in Mississippi "the twin torts of libel" are divided into defamation for written statements and slander for oral ones.  *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001).  Based upon the

allegations in the First Amended Complaint it appears that Underwood's claim is one for slander.  The elements of slander are

> (a) a false statement that has the capacity to injure the plaintiff's reputation;
> (b) an unprivileged publication, i.e., communication to a third party;
> (c) negligence or greater fault on part of the publisher; and
> (d) "either actionability of statement irrespective of special harm or existence of special harm caused by publication."

*Id.* (quoting *Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998)).

As noted by Defendants, Underwood has not alleged or identified any specific person to whom White made the statements, nor has she submitted evidence establishing what the content of the actual statements was, or how they harmed her.  *See* First Am. Compl. [12].  She has not argued how these statements were actionable irrespective of harm or that any special harm resulted.  In short, Underwood has not pointed the Court to any competent summary judgment evidence sufficient to support a claim against White for defamation, and he is entitled to summary judgment on this claim.

### III. CONCLUSION

Based upon its review of the summary judgment record, the Court concludes that the Motion of Defendants MDOC, Hall, and White for summary judgment should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Mississippi Department of Corrections, Ben White, and Pelicia Hall's Motion [58] for Summary Judgment is **GRANTED IN PART** as to Plaintiff Sarah Underwood's claims against them under the Rehabilitation Act and the Americans with

27

Disabilities Act; as to her claims against Defendant Ben White for defamation under state law and for sex discrimination based upon a hostile work environment under 42 U.S.C. § 1983; and as to her 42 U.S.C. § 1983 and Title VII claims against Defendants Mississippi Department of Corrections, Ben White, and Pelicia Hall for retaliation.  These claims are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Ben White is **DISMISSED** as a Defendant in this lawsuit as no claims remain pending against him.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendants' Motion [58] for Summary Judgment is **DENIED IN PART** as to Plaintiff's claims for sex discrimination based upon a hostile work environment against Defendant Mississippi Department of Corrections under Title VII and against Defendant Pelicia Hall in her official capacity under 42 U.S.C. § 1983.  These claims will proceed.

**SO ORDERED AND ADJUDGED**, this the 13th day of July, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE