**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SARAH UNDERWOOD** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:18cv24-HSO-JCG** |
| | § | |
| | § | |
| **MISSISSPPI DEPARTMENT OF** | § | |
| **CORRECTIONS** | § | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT MISSISSIPPI DEPARTMENT OF CORRECTIONS'S MOTION [127] FOR JUDGMENT AS A MATTER OF LAW AND CONDITIONALLY GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL OR REMITTITUR

BEFORE THE COURT is Defendant Mississippi Department of Corrections's

Renewed Motion [127] for Judgment as a Matter of Law, or in the alternative, a

New Trial or Remittitur. This Motion has been fully briefed. Having considered the

parties' submissions, the record in this case, and relevant legal authority, the Court

finds that the Motion [127] for Judgment as a Matter of Law should be denied and

that the Motion for New Trial or Remittitur should be conditionally granted.

Plaintiff Sarah Underwood may either consent to a remitted compensatory damages

award or elect a new trial on damages.

## I.  BACKGROUND

### A.  Factual background

Plaintiff Sarah Underwood ("Plaintiff") has been employed by the Mississippi

Department of Corrections ("MDOC") since 2013. Trial Tr. Vol. III, at 6. In 2016,

Plaintiff was working as a probation/parole agent trainee in MDOC's Pearl River

County office, where she helped monitor offenders' compliance with the conditions

of their probation or parole. Trial Tr. Vol. II, at 61. The events from which this action arose commenced on September 27, 2016, when senior probation officer Bryan Scott Davis ("Davis"), Plaintiff's coworker, began sending her text messages proclaiming that he had feelings for her. *Id*. at 65-67; Joint Ex. 7, at 1. The text messages continued over the next month, Trial Tr. Vol. II, at 69-72, 75-81, and on October 26, 2016, Plaintiff made her first report of Davis's conduct to her supervisor Ben White ("White"), Joint Ex. 12, at 3. Plaintiff did not specifically mention the text messages, but merely informed White that she believed Davis was struggling with his home life and that his behavior had changed recently. *Id*.

The next day, Plaintiff rode with Davis in his MDOC vehicle to a staff meeting. Trial Tr. Vol. II, at 84. Plaintiff had become uncomfortable around Davis at this point, so she asked a fellow officer to ride with them; she observed that Davis was unhappy about this and "drove like a maniac." *Id*. When they returned to the Pearl River County office, Davis stood in the doorway of Plaintiff's office and again expressed his romantic feelings for her. *Id*. at 84, 96. On October 30, 2016, Davis sent Plaintiff over 60 messages, to which she never responded, and called her seven times. *Id*. at 103. At this point Plaintiff contacted White again and informed him that Davis was harassing her. Joint Ex. 9, at 3.

There is no dispute that White contacted his superior and the decision was made to immediately transfer Davis to another office, in Marion County. Def.'s Ex. 1, at 1. White then instructed Plaintiff to fill out an incident report, which she completed on October 31, 2016. *Id*; *see* Joint Ex. 12. Two days later, MDOC issued a

"NO CONTACT DIRECTIVE" to Davis which prohibited him from contacting Plaintiff directly or through any other person. Joint Ex. 1, at 1. There is no dispute that after November 2, 2016, Davis had no further direct contact with Plaintiff, via text message or otherwise. Trial Tr. Vol. III, at 13. Over the next few months, MDOC conducted an investigation into Davis's conduct, which culminated in a finding that Davis had sexually harassed Plaintiff in violation of MDOC policy, Joint Ex. 12, at 8, and resulted in a suspension of Davis for fifteen days without pay, Joint Ex. 5, at 1.

Plaintiff testified that after she filed her sexual harassment complaint against Davis, no one at the Pearl River County MDOC office would speak to her and rumors of what happened between her and Davis were circulated by her fellow officers. Trial Tr. Vol. II, at 105-06. Despite the no contact directive and investigation into his harassing behavior, Plaintiff testified that Davis told his former coworkers to "watch their backs, that [Plaintiff] was out to get them" and that she was making up her allegations. *Id.* at 106-07. White spoke with Davis on several occasions after Plaintiff filed her incident report and stated that Davis believed Plaintiff was trying to get him fired. Joint Ex. 12, at 6.

According to Plaintiff, rumors about her continued to circulate in the MDOC community, and on January 30, 2017, Plaintiff emailed Corrie Cockrell ("Cockrell"), an MDOC attorney and one of the investigators handling Plaintiff's complaint about Davis, to inform her that Davis was telling other MDOC employees that she had sent him naked pictures of herself. Pl.'s Ex. 2, at 2. Plaintiff denied sending these

3

pictures and MDOC concluded that this rumor was unsubstantiated. Joint Ex. 12, at 9. On March 29, 2017, Davis, while still working in Marion County, filed an incident report in which he claimed that Plaintiff had overdosed on Adderall over the weekend of March 19, 2017. Joint Ex. 20, at 1. In an incident report filed on August 30, 2017, James Burch ("Burch"), an MDOC Agent, stated that before he began working in the Pearl River County Office, he "was warned that [Plaintiff] . . . was known for getting people fired or wrote up due to her being a mischievous [and] malicious person." Joint Ex. 23, at 1. Burch also stated that he was told that Plaintiff had gang affiliations and slept with inmates. *Id*. In October 2017, Plaintiff was transferred to MDOC's Stone County office, Trial Tr. Vol. II, at 125-26, and was informed by one of her coworkers there that there was a rumor that she was sleeping with offenders, *id*. at 133.

As of the time of trial, Plaintiff was still employed by MDOC, Trial Tr. Vol. III, at 41, working in the Hancock County office in a similar role to the one she held in 2016 and 2017, *id*. at 41, 75. Plaintiff testified that the preceding events did not cause her to miss a single day of work and she at all times continued to receive the same level of pay. *Id*. at 6-7, 41.

B.    Procedural history

Plaintiff filed an initial EEOC charge on June 9, 2017, in which she detailed Davis's sexual harassment, the continuing alleged harassment from her coworkers, and what she believed was subsequent retaliation. Ex. 1 [12-1] at 5-6. She amended her charge on October 24, 2017, to include additional evidence of discrimination and

retaliation. *Id*. at 9-11. Plaintiff was issued a right to sue letter as to her first charge on October 20, 2017. *Id*. at 2.

Plaintiff sued MDOC, Pelicia Hall ("Hall") in her official capacity as the MDOC Commissioner, White, and Davis on January 19, 2018. Compl. [1]. Plaintiff filed a First Amended Complaint [12] against Defendants on May 2, 2018, which advanced claims under Mississippi Code Annotated § 25-9-149, the Rehabilitation Act, 29 U.S.C. §§ 701-795, the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, state defamation law, and 42 U.S.C. § 1983, all arising out of the sexual harassment and retaliation she allegedly experienced during her employment with MDOC. Am. Compl. [12] at 6-8.

Prior to trial the Court entered an Agreed Judgment [76] as to Davis in Plaintiff's favor pursuant to Federal Rule of Civil Procedure 54(b) and terminated him from this case. Agreed J. [76] at 2. The Court also granted summary judgment in favor of MDOC, Hall, and White as to Plaintiff's claims under the Rehabilitation Act and as to her 42 U.S.C. § 1983 and Title VII claims for retaliation; and in favor of White as to Plaintiff's state-law defamation claim and sex discrimination claim based on a hostile work environment under 42 U.S.C. § 1983. Order [74] at 27-28. The Court's Order [73] also dismissed White from the case. *Id*. at 28. This left for trial Plaintiff's Title VII claim against MDOC for sex discrimination based upon a

hostile work environment and her claim against Burl Cain ("Cain")[1] under 42 U.S.C. § 1983.

C.      Trial and post-trial proceedings

Plaintiff's claims were tried before a jury on June 14-17, 2021. J. [117] at 1. At the close of Plaintiff's case-in-chief, MDOC and Cain moved for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a) as to Plaintiff's Title VII and § 1983 claims, as well as on her claim for punitive damages. Order [108]. The Court granted the Motion as to Plaintiff's claim against Cain under 42 U.S.C. § 1983 and as to her claim for punitive damages, and denied it as to her Title VII hostile work environment claim against MDOC. *Id*. The Court further dismissed Cain as a Defendant after concluding that it had dismissed all claims for which he was a proper Defendant. Order [116]. MDOC reasserted its request for judgment as a matter of law at the close of the entire case, Trial Tr. Vol IV, at 34, which the Court denied, Trial Tr. Vol V, at 7-23. The jury returned a verdict in Plaintiff's favor as to her Title VII claim for hostile work environment against MDOC and awarded her $750,000.00 in compensatory damages for emotional distress, which the Court reduced to $300,000.00 pursuant to the noneconomic damages cap set forth at 42 U.S.C. § 1981a(b)(3)(D). Jury Verdict [113] at 2; J. [117] at 1.

MDOC has filed a Renewed Motion [127] for Judgment as a Matter of Law, or, in the alternative, a New Trial or Remittitur. Mot. [127]. MDOC contends that it

---

[1] In 2020, Nathan Burl Cain assumed the role of MDOC Commissioner and was substituted as a party. *See* Mot. [96] at 1 n.1; Notice [106] of Appearance (citing Federal Rule of Civil Procedure 25(d)).

is entitled to judgment as a matter of law "because the jury lacked a legally

sufficient evidentiary basis to find for . . . Plaintiff and award her damages." Mem.

[128] at 1. Alternatively, MDOC argues that the Court should grant a new trial as

to Plaintiff's damages or "significantly remit" her award. *Id.* Plaintiff has filed a

Response [129] in Opposition and MDOC has filed a Rebuttal [131].

## II.  DISCUSSION

A.  Renewed Motion for Judgment as a Matter of Law

1.  Applicable legal standards

Federal Rule of Civil Procedure 50(b) permits a party, within 28 days after

the entry of judgment, to file a renewed motion for judgment as a matter of law.

Fed. R. Civ. P. 50(b). Judgment as a matter of law is appropriate only when the

"facts and inferences point so strongly and overwhelmingly in the movant's favor

that reasonable jurors could not reach a contrary conclusion." *OneBeacon Ins. Co. v.

T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) (internal quotation

marks omitted) (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th

Cir. 2012)). The Court must draw "all reasonable inferences in the light most

favorable to the verdict and cannot substitute other inferences that [it] might

regard as more reasonable." *Id*. It is the non-moving party's burden to "at least

establish a conflict in substantial evidence on each essential element of their claim."

*North Cypress Med. Ctr Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th

Cir. 2018) (quoting *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1039 (5th

Cir. 2011)). "Substantial evidence is more than a scintilla, less than a

preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 485 (5th Cir. 2017)).

Plaintiff's sole remaining Title VII claim makes it unlawful for employers to compel "people to work in a discriminatorily hostile or abusive environment." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A hostile work environment claim requires a plaintiff to prove that "(1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action." *West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020) (internal quotation marks omitted) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

To establish the fourth element, "the harassment must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007)). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). The Court is to assess the "totality of the circumstances to determine whether an environment is

objectively hostile" by considering the following factors: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *West*, 960 F.3d at 742 (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 23). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Lauderdale*, 512 F.3d at 163 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

2.    The parties' arguments

MDOC maintains that it is entitled to judgment as a matter of law because Plaintiff failed at trial to establish the fourth element of a hostile work environment claim, that the harassment she suffered affected a term, condition, or privilege of her employment. Mem. [128] at 13.[2] Specifically, it challenges Plaintiff's evidence of severity and pervasiveness as insufficient to establish that her coworkers' conduct created an abusive or hostile work environment. *Id*. at 5-6. On this issue, MDOC contends that "Plaintiff provided the jury with nothing more than 'allegations of idle gossip and rumors' that neither diminished the Plaintiff's ability to work nor established an objectively hostile work environment." *Id*. at 8.

In support of its position, MDOC draws the Court's attention to *Giardina v. Lockheed Martin Corp.*, a case from the Eastern District of Louisiana where the

---

[2] MDOC does not challenge the remaining elements of Plaintiff's Title VII hostile work environment claim. *See* Mem. [128] 5-13; Rebuttal [131] at 2-8.

9

court dismissed plaintiff's hostile work environment claim because she failed to establish the fourth element. No. Civ.A. 02-1030, 2003 WL 21634934, at *4 (E.D. La. July 3, 2003). In *Giardina*, the plaintiff presented evidence that her coworkers were spreading rumors that she was a "troublemaker," called her a "bitch," and warned others not to "talk to her, she'll file a complaint against you." *Id.* at 1. The court concluded that these "rumors and comments [were] irksome, but [did] not rise to the level of disrupting the work environment or causing humiliation to [plaintiff]." *Id.* at 5. The court found it significant that the rumors were not directed specifically at plaintiff, in that they were not said directly to her. *Id.* at 5-6.

MDOC maintains that Plaintiff's case is "on all fours with" *Giardina* because the rumors Plaintiff claims were spread about her were neither directed at her nor said directly to her, and that none of Plaintiff's testimony with respect to the rumors came from first-hand knowledge. Mem. [128] at 6, 8-9. MDOC also argues that Plaintiff had no knowledge of the incident reports that Davis filled out "during the relevant time period." *Id.* at 10. MDOC asserts that, taken together, this evidence is inadequate to prove that any harassment Plaintiff suffered was sufficiently severe or pervasive to support a jury verdict. *Id.* at 11.[3]

MDOC further argues that Plaintiff's work environment was not objectively offensive, because the alleged harassment did not hinder her job performance. *Id.* at

---

[3] MDOC also cites *DeAngelis v. El Paso Mun. Police Officers Ass'n* in support of its argument that the rumors spread about Plaintiff were not repeated directly to her. 51 F.3d 591 (5th Cir. 1995). In *DeAngelis*, the Fifth Circuit found that "[f]our derogatory references to [plaintiff] at irregular intervals in two and a half years do not evince sufficient hostility toward her as a matter of law." *Id.* at 596.

11-12. Plaintiff acknowledged that she still works for MDOC, that her pay has remained the same, and that she did not miss a day of work because of the harassment in this case. Trial Tr. Vol. II, at 6-7, 41. MDOC asserts that this evidence proves that the rumors did not affect how Plaintiff performed her job, which it contends is fatal to a hostile work environment claim. Mem. [128] at 13.

Plaintiff responds that she presented evidence of severe or pervasive harassment to support the jury's finding on this issue, Mem. [130] at 1-2, and she directs the Court to several items of evidence which she contends should be considered in evaluating the totality of the circumstances to determine objective offensiveness, *id.* at 5.[4] Plaintiff distinguishes her case from *Giardina* by explaining that she suffered more severe and pervasive harassment due to the "uniquely 'tight knit' environment" at the Pearl River County MDOC office, her "situation as a young woman just entering her career," and other incidents of harassment. *Id.* at 6.

Plaintiff takes the position that her case is substantially similar to *Donaldson v. CDB Inc.*, 335 F. App'x 494 (5th Cir. 2009). In *Donaldson*, plaintiff presented evidence "concerning the pervasive nature of [her harasser]'s sexually-suggestive comments regarding both her physical appearance and her relationship with her boyfriend." *Id.* at 502. The harasser's comments included a remark that he could say anything he wanted "so long as I don't touch." *Id.* The Court found that

---

[4] Specifically, Plaintiff cites the following incidents of "harassing behavior": Davis's calls and text messages in September and October 2016, including seven calls and sixty text messages in one day; Davis "physically cornering [Plaintiff] in an isolated office;" Davis driving "like a maniac" with Plaintiff in the car; and Davis's comments to Plaintiff's coworkers which she argues "resulted in her co-workers' ostracization of her." Mem. [130] at 5 (citing Trial Tr. Vol. II, at 84, 96, 103, 105).

"the regular, pervasive nature of the incidents in this action, coupled with the limited time period within which this took place," combined with the fact that the harassing behavior caused her to miss several days of work, were sufficient to create fact issues on plaintiff's hostile work environment claim. *Id*. at 504.

3.   <u>Analysis</u>

a.   <u>Whether the harassment affected a term, condition, or privilege of Plaintiff's employment</u>

(i)   <u>Frequency of the discriminatory conduct</u>

The Fifth Circuit has noted that "[f]requent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists." *Lauderdale*, 512 F.3d at 163. The Fifth Circuit has deemed an environment hostile or abusive based on the frequency of the harassing conduct on several occasions. For example, *Lauderdale* held that plaintiff had endured pervasive harassment where her harasser "called her ten to fifteen times a night for almost four months." *Id*. at 164. Similarly, in *Farpella-Crosby v. Horizon Health Care*, the Fifth Circuit affirmed a jury's finding that plaintiff suffered from a hostile work environment where her harasser "inquired about [plaintiff's] sexual activity or made comments similarly offensive two or three times a week" over a six-month period. 97 F.3d 803, 806 (5th Cir. 1996); *see also Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009) (finding legally sufficient evidence to support the jury's hostile work environment award where the harasser "repeatedly asked [plaintiff] out, propositioned her, and commented on her physical appearance and dress" over a

12

thirty-two-day period); *Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 524 (5th Cir. 2001) (affirming a jury's hostile work environment verdict in plaintiff's favor where the harasser "engaged in repeated, aggressive sexual advances in the face of adamant refusal by [plaintiff]").

Here, MDOC has acknowledged that Davis engaged in sexually harassing behavior in the form of repeated and numerous inappropriate text messages. Joint Ex. 12, at 8-9. The timeline Plaintiff testified to establishes that between September 27, 2016, and October 30, 2016, Davis repeatedly expressed his romantic feelings for Plaintiff. Trial Tr. Vol. II, at 65-95; Joint Ex. 7, at 1-18. On ten different days during this period Davis texted Plaintiff non-work-related messages which pertained to his feelings, Joint Ex. 7, at 1-18, and on nine days during this period Davis sent Plaintiff at least twelve messages, with a high of eighty-seven sent on October 17, 2016, *id.* It is undisputed that Davis sent over sixty text messages and called Plaintiff seven times on October 30, 2016, *id.* at 13-18; Trial Tr. Vol. II, at 103, and that Davis's messages stopped after October 31, 2016, when Plaintiff complained to White, Joint Ex. 9, at 1-3; Joint Ex. 7, at 17-18.

Plaintiff's remaining trial evidence of harassing behavior consisted of rumors which were less frequent. Plaintiff testified that after she filed her sexual harassment report on October 31, 2016, there was no further direct contact from Davis, but "[p]eople were talking about what was going on . . . between [Davis] and me," and that Davis told her coworkers to "watch their back." Trial Tr. Vol. II, at 106. On December 4, 2016, Plaintiff alerted White of a rumor she had heard that

Davis was transferred because he was sleeping with someone in Pearl River County. Joint Ex. 29, at 1. On January 30, 2017, Plaintiff informed Cockrell that Davis was telling MDOC employees that she sent him naked pictures of herself. Pl.'s Ex. 2, at 2. Several months later, after moving to the Stone County MDOC office in October 2017, Plaintiff testified that a coworker informed her that there was a rumor that she was sleeping with offenders. Trial Tr. Vol. II, at 125-126, 133.

The trial record reveals that during the relevant time period Plaintiff was unaware of the remaining evidence she cites in support of her claim. The first item is the report filed by Davis on March 29, 2017, in which he claimed that Plaintiff had overdosed on the weekend of March 19, 2017, Joint Ex. 20, at 1, and the second is Burch's report filed on August 30, 2017, in which he stated that he was warned about Plaintiff and knew of the rumor that she was sleeping with offenders, Joint Ex. 23, at 1. Nowhere in the trial record is there any evidence that Plaintiff had any knowledge of these reports in and around the time they were filed. *See, e.g.,* Trial Tr. Vol. III, at 48 (stating "I don't believe I've ever read this" when asked if she had seen the incident report filed by Burch). As such, this evidence cannot be used to support a claim that Plaintiff was subjected to pervasive harassment. *See Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618 (5th Cir. 2020) (holding that the rumors about plaintiff were insufficient to support a hostile work environment based in part on a lack of evidence that plaintiff was aware of the rumors about her during her employment).

Nevertheless, having considered all of the evidence under the relevant legal standard, the Court finds that under the totality of the circumstances a reasonable jury could have had a legally sufficient evidentiary basis to find that Plaintiff was subjected to frequent or pervasive harassment. *See Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 377-78 (5th Cir. 2015) (recognizing the applicable legal standard for a Rule 50(b) motion). As MDOC itself has acknowledged, during a thirty-three-day window Plaintiff was subjected to sexually harassing behavior at the hands of Davis. Joint Ex. 7, at 1-18; Joint Ex. 12, at 2-4, 8. In *Alaniz*, the Fifth Circuit affirmed a jury finding of a hostile work environment where the harasser "repeatedly asked [plaintiff] out, propositioned her, and commented on her physical appearance and dress" over a thirty-two-day period. *Alaniz*, 591 F.3d at 772. The regularity of Davis's inappropriate messages and the condensed timeframe over which they occurred are similar to that in *Alaniz*. As such, this evidence is sufficient to weigh this factor in Plaintiff's favor.

(ii)    <u>Other factors</u>

Even given the frequency of Davis's harassing conduct, Plaintiff has presented insufficient evidence for a reasonable jury to conclude that she was subjected to severe harassing behavior. *Lauderdale*, 512 F.3d at 163. Neither Davis's messages nor the rumors that resulted from his actions were sufficient to be actionable as severe under Title VII. *See Shepherd v. Comptroller of Pub. Accts.*, 168 F.3d 871, 874 (5th Cir. 1999) (finding comments about the plaintiff's appearance

and the defendant touching plaintiff's arm as conduct that "[e]ven if [it] occurred with some regularity" did not constitute severe harassment).

In addition, Davis's text messages, despite their character and numerosity, cannot be categorized as threatening or humiliating. *Compare Mable v. Navasota Ind. Sch. Dist.*, No. 09-CV-00123, 2010 WL 11453634, at *13 (S.D. Tex. Aug. 18, 2010) (finding that plaintiff had presented sufficient evidence of physically threatening behavior where she testified about two incidents of physical battery and one incident of verbal assault), *with Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (finding the harasser's statement that he and the plaintiff "should be 'sweet' to each other" and the harasser expressing his love for the plaintiff was not threatening or humiliating conduct). Moreover, the various rumors Plaintiff heard indirectly, while perhaps offensive, were not threatening. Although Plaintiff now claims that they were humiliating, Mem. [130] at 8, she did not testify to that effect at trial, *see generally* Trial Tr. Vol. II, at 60-135; Trial Tr. Vol. III, at 6-101. As such these rumors can only be categorized as nothing more than offensive utterances. *Shepherd*, 168 F.3d at 874 ("The mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment.") (internal quotation marks omitted) (quoting *Harris*, 510 U.S. at 21)).

Finally, even construing all of the evidence presented at trial in Plaintiff's favor, it is insufficient to conclude that the harassment unreasonably interfered with her work performance. There is no evidence in the trial record of how Davis's

16

actions or the rumors actually interfered with Plaintiff's work performance. *See Johnson v. Halstead*, 916 F.3d 410, 418 (5th Cir. 2019) (concluding that racial harassment interfered with plaintiff's work performance where it "led to officers' boycotting meetings with [plaintiff] and ignoring his assignments; colleagues' refusing to assist with the grant program [plaintiff] oversaw; and [plaintiff] being investigated for fraud"). Nor does the evidence support a finding that the harassment detracted from Plaintiff's work performance, discouraged her from continuing her employment, or kept her from progressing in her career. *See Barkley Singing River Elec. Power Ass'n*, 433 F. App'x 254, 258 (5th Cir. 2011). Instead, the conduct complained of is akin to what the Fifth Circuit has recognized as "the kind of conduct that would . . . [not] destroy [Plaintiff's] opportunity to succeed in the workplace." *Stewart*, 586 F.3d at 330 (concluding that the harasser's inappropriate statements of affection every few days would not "interfere unreasonably with a reasonable person's work performance"); *Shepherd*, 168 F.3d at 874 (finding sexual teasing and inappropriate touching over a period of two years was "not the type of extreme conduct that would prevent [plaintiff] from succeeding in the workplace").

Nevertheless, the Court concludes that there remains substantial evidence to support the jury's verdict on liability for a hostile work environment. "Although no single incident of harassment" was sufficient to establish severe or pervasive harassment, "when considered together and viewed in the light most favorable" to the jury's verdict, the trial evidence shows a pattern of harassment sufficient to

establish its pervasiveness and support the jury's verdict. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 401 (5th Cir. 2007).

To satisfy the fourth element of a hostile work environment claim, the harassment must be "severe *or* pervasive." *Id.* at 399 (emphasis added). Plaintiff carried her burden under this element at trial by presenting evidence of frequent incidents of harassment which, when taken together, rise to the level of pervasive harassment. *See Donaldson*, 335 F. App'x at 503 (noting that "a discrimination analysis must concentrate not on individual incidents, but on the overall scenario") (quoting *Jackson v. Quanex Corp.,* 191 F.3d 647, 660 (6th Cir. 1999)). Specifically, Plaintiff's testimony about the frequency of the harassing behavior, along with MDOC's acknowledgment that Davis's direct contact constituted sexual harassment and the totality of the other evidence in the trial record, constitutes evidence that "a reasonable mind might accept as adequate to support" the conclusion the harassment affected a term, condition, or privilege of Plaintiff's employment. *North Cypress Med. Ctr Operating Co.*, 898 F.3d at 473 (quoting *Conn. Gen. Life Ins. Co.*, 878 F.3d at 485); Joint Ex. 12, at 8-9; Trial Tr. Vol. II, at 65-84, 94-97 (plaintiff testifying about Davis's conduct).

b.    Failure to take prompt remedial action

MDOC's Renewed Motion [127] is "technically only a renewal of the [Rule 50(a) motion for judgment as a  matter of law]." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019) (quoting *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985)). Accordingly, the Court can only grant MDOC's Rule 50(b) motion

on grounds raised in its pre-verdict motion, "because the former is conceived of as only a renewal of the latter." *Id.* (quoting 9B Charles Alan Wright & Arthur K. Miller, *Federal Practice and Procedure* § 2537 (3d ed. 2018)). MDOC has not addressed the fifth element of a hostile work environment claim in its present Motion [127], and its Rule 50(a) motion at trial did not advance any argument as to the prompt remedial measures element. Trial Tr. Vol. III, at 146-48, 150-52.[5] As such, any argument by MDOC that Plaintiff failed to prove this element is not properly before the Court and cannot be considered. *See In re Isbell Recs., Inc.*, 774 F.3d 859, 867 (5th Cir. 2014) ("By not raising this argument at trial or in its Rule 50(a) motion, [the moving party] has waived its right to bring a Rule 50(b) motion on this ground.").

In sum, on the whole record the facts and inferences do not "point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not arrive at a contrary verdict." *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 855 (5th Cir. 2010). The Court finds that there was sufficient substantial evidence to support the jury's verdict on liability. MDOC's Renewed Motion [127] for Judgment as a Matter of Law should be denied.

---

[5] Although MDOC referenced in its argument at trial a "fifth element" of a hostile work environment claim, it only argued that the harassing conduct did not affect a term, condition, or privilege of Plaintiff's employment, without any discussion or substantive argument regarding whether MDOC took prompt remedial action. Trial Tr. Vol. III, at 146.

B.    Motion for a New Trial

1.    Relevant standards

MDOC also moves for a new trial on damages, arguing that the jury's compensatory damages award "is excessive and entirely disproportionate." Mem. [28] at 13. As detailed previously, the jury awarded Plaintiff $750,000.00 in compensatory damages for emotional distress, which the Court reduced to $300,000.00 pursuant to the noneconomic damages cap set forth at 42 U.S.C. § 1981a(b)(3)(D). Jury Verdict [113] at 2; J. [117] at 1.[6]

A court has the discretion to grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A); *Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 417 (5th Cir. 2020). The Fifth Circuit has identified several grounds as sufficient to order a new trial, including "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted). A jury award is excessive "only if it is greater than the maximum amount the trier of fact could properly have awarded." *Moore v. M/V ANGELA*, 353 F.3d 376, 384 (5th Cir. 2003) (citation omitted).

---

[6] The Court earlier granted as unopposed MDOC's pre-verdict Motion for Judgment as a Matter of Law as to Plaintiff's claim for punitive damages, leaving her compensatory damages claim for emotional distress as her only damages claim. Trial Tr. Vol. III at 153.

The Court must "review with deference damage awards based on intangible harm, because 'the harm is subjective and evaluating it depends considerably on the demeanor of witnesses.'" *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 487 (5th Cir. 2001) (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937-38 (5th Cir. 1996)). Before evaluating whether a jury verdict is excessive, a court must first determine whether a plaintiff is entitled to anything greater than nominal damages. *See Burns v. Nielsen*, 506 F. Supp. 3d 448, 482-88 (W.D. Tex. 2020) (determining whether the plaintiff was entitled to compensatory damages before turning to whether the jury's verdict was excessive).

2.    Whether Plaintiff was entitled to compensatory damages

Compensatory damages for intangible injuries, including emotional harm, "will not be presumed simply because the plaintiff is a victim of discrimination." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 239 (5th Cir. 2001) (citation omitted). Instead, there "must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm." *Giles*, 245 F.3d at 487 (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998)). The Fifth Circuit has recognized that "hurt feelings, anger and frustration are part of life and are not the types of harm that could support a mental anguish award," *id.* at 488, but has deemed "sleeplessness, anxiety, stress, marital problems, and humiliation," as well as other manifestations of emotional harm, sufficient to support an award of damages for emotional distress, *Migis v.*

21

*Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998); *see also DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007).

Although "corroboration and expert testimony" are preferred, *Thomas v. Tex. Dept. of Crim. Just.*, 297 F.3d 361, 368 (5th Cir. 2002), "[i]n certain cases a plaintiff's testimony alone may be sufficient proof of mental damages," *Giles*, 245 F.3d at 488 (quoting *Brady*, 145 F.3d at 720). Where an emotional distress award is based "exclusively on the plaintiff's testimony," the Court must "scrupulously analyze" it. *Id.* (quoting *Brady*, 145 F.3d at 719). A plaintiff's "vague allegations" and "conclusory statements" are insufficient. *See Thomas*, 297 F.3d at 369; *Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013).

Here, Plaintiff testified on direct examination that since the harassing events she experienced panic attacks, daily migraines, "stomach problems," had to "have shots in my face and my head," and that her TMJ worsened. Trial Tr. Vol. II, at 134-35. On cross-examination, Plaintiff admitted that she suffered from migraines, IBS, and TMJ before the harassment occurred, Trial Tr. Vol. III, at 18-19; Def.'s Ex. 14, at 2, but on redirect she explained that these conditions became "much worse" after the harassment, Trial Tr. Vol. III, at 81-82.

Plaintiff testified that she went from having migraines "not very often," to spending "more time with [a migraine] than without them" and that she sought out "several specialists to try to control them." *Id.* at 81-82. She also testified that since the harassment began her IBS had gone from bothering her "every once in awhile," meaning "a few times a month," to dealing with symptoms every day. *Id.* In

addition, Plaintiff stated that her TMJ had "gotten a lot worse," in that she "feels like [she has] been punched in the face multiple times." *Id*. Finally, Plaintiff testified, without any medical evidence, that she was placed on medication for depression following the harassment and that she takes medication every day. *Id*. at 83.

Plaintiff did not offer any medical evidence or expert testimony to support her testimony. The only corroborating evidence Plaintiff has directed the Court to is that of her coworker, Candice Stewart. Mem. [130] at 15. Ms. Stewart testified that

> I honestly don't know how she did her job because she was so stressed with everything. I mean, she would come in and look so distraught and just so -- I don't know how to explain it. She would be upset, she would be crying. She was stressed, completely stressed out all the time.

Trial Tr. Vol. III, at 120.

Although Plaintiff relies almost exclusively on her own testimony, based upon Fifth Circuit precedent she has presented sufficient evidence to warrant an award greater than only nominal damages. *See Thomas*, 297 F.3d at 369-70 (collecting cases). Plaintiff's direct examination testimony consisted of mostly conclusory statements about her physical manifestations of emotional distress, and the Fifth Circuit recognized in *Brady* that this type of testimony, which merely lists manifestations without any explanation "as to the nature or extent or severity of the alleged harm," is ordinarily insufficient to support a compensatory damages award. *Brady*, 145 F.3d at 719. If this were Plaintiff's only evidence, she likely would not be entitled to more than nominal damages.

However, on redirect examination, Plaintiff's testimony went further and was sufficient to establish that she suffered a "discernible injury" as a result of the harassment. *WC&M Enters., Inc.*, 496 F.3d at 402-03. Plaintiff described the nature, extent, and severity of her migraines, IBS, and TMJ, including how these issues had been aggravated. Trial Tr. Vol. III, at 81-83. In addition, she testified that she was prescribed medication to treat her depression and TMJ. *Id.* at 83; *see also Brady*, 145 F.3d at 719 (finding the lack of medication to treat the plaintiffs' "mental upsets" as evidence supporting its finding that the plaintiffs were not entitled to mental anguish damages). The Fifth Circuit has found similar testimony sufficient to support a compensatory damages award. *See Vadie v. Miss. State Univ.*, 218 F.3d 365, 377-78 (5th Cir. 2000) (finding the plaintiff's testimony that he suffered sleeplessness, headaches, and nausea that required him to take medication sufficient to support a $10,000.00 emotional distress award); *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 470-71 (5th Cir. 2001) (finding that plaintiff's "testimony concerning stress, sleeplessness, betrayal, and shame" sufficient to support the jury's award of $20,000.00).

In this case, the Court is of the view that the jury's award for emotional distress was excessive and against the weight of the evidence, but that, based upon the foregoing Plaintiff is nevertheless entitled to an award of some amount greater than nominal damages.

3.   <u>Maximum recovery rule</u>

In determining whether a jury's compensatory damages award is excessive, the Fifth Circuit employs the "maximum recovery rule," *Puga*, 922 F.3d at 297, which provides that a court should "decline to reduce damages where the amount awarded is not disproportionate to at least one factually similar case from the relevant jurisdiction," *id*. (quoting *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002)). Contrary to MDOC's assertion,[7] in cases tried before a jury, a 50% enhancement, or a multiplier, is applied to past similar awards to measure disproportionality. *Id*. The Fifth Circuit has directed that, under this rule, the maximum amount a jury can award is "150% of the highest inflation-adjusted recovery in an analogous, published decision." *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019) (citations omitted). For federal discrimination claims, the "relevant jurisdiction" means only cases decided by the Fifth Circuit. *Salinas v. O'Neil*, 286 F.3d 827, 831 (5th Cir. 2002).

MDOC contends that Plaintiff's uncorroborated testimony is similar to the testimony upon which the Fifth Circuit relied in *Patterson*, such that Plaintiff is only entitled to nominal damages. Mem. [128] at 20-21; *Patterson*, 90 F.3d at 940-41 (remitting plaintiff's compensatory damages award to nominal damages where the plaintiff "failed to present sufficient competent testimony and/or other evidence to

---

[7] MDOC contends that the Court "may," but is not required to, apply this enhancement. Mem. [128] at 19, n. 8; Rebuttal [131] at 8-9. However, recent Fifth Circuit precedent is clear that the 50% enhancement must be applied in jury cases to determine the maximum amount a jury could award. *See Puga*, 922 F.3d at 297; *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2020); *Echeverry v. Jazz Casino Co., L.L.C.*, 988 F.3d 221, 236 (5th Cir. 2021).

demonstrate the nature and extent of emotional harm caused by her unlawful termination"). However, the Court has already determined that Plaintiff's testimony was sufficient to warrant an award greater than nominal damages, making *Patterson* distinguishable. MDOC argues that Plaintiff's testimony is also similar to that in *Migis*, where the Fifth Circuit affirmed a compensatory damages award of $5,000.00 based solely on the plaintiff's testimony. *Migis*, 135 F.3d at 1045-47; *see* Mem. [128] at 21. The Court does not disagree that this case is factually similar, but it is not, as the Fifth Circuit requires, the "highest . . . recovery in an analogous, published decision." *Longoria*, 932 F.3d at 365.

Instead, after reviewing published[8] Fifth Circuit employment discrimination decisions,[9] the Court finds that *Vadie* appears to be the highest recovery in a factually similar case.[10] In *Vadie*, the plaintiff sued Mississippi State University for racial and national origin discrimination and retaliation in violation of Title VII. *Vadie*, 218 F.3d at 370. The plaintiff was awarded $350,000.00 in compensatory

---

[8] Both parties' briefs cite unpublished cases applying the maximum recovery rule, as well as published cases not from the Fifth Circuit. Mem. [128] 19-22; Mem. [130] 11-16. The Court may only consider published decisions from the Fifth Circuit in applying this rule. *Longoria*, 932 F.3d at 365; *see also Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 660-661 (S.D. Tex. 2019) (applying this rule).

[9] *See Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *Farpella-Crosby*, 97 F.3d at 809; *Migis*, 135 F.3d at 1046-47; *Patterson*, 90 F.3d at 938-40; *Brady*, 145 F.3d at 718-20; *Vadie*, 218 F.3d at 378; *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 486-87 (5th Cir. 2000); *Giles*, 245 F.3d at 487-89; *Flowers*, 247 F.3d at 238-39; *Oden*, 246 F.3d at 470-71; *Thomas*, 297 F.3d at 369-372; *DeCorte*, 497 F.3d at 442-43.

[10] The Court also finds that, despite some parallels between Plaintiff's case and the Fifth Circuit's *Forsyth* decision, *Forsyth* is distinguishable. Here, Plaintiff presented no evidence that she lost weight or had marital problems as a result of Davis's harassment. *See Forsyth*, 91 F.3d at 774 (one plaintiff testifying that she suffered from weight loss and marital problems). More importantly, Plaintiff also testified that she never missed a day of work due to the harassment she endured, whereas one of the plaintiffs in *Forsyth* was "sent home from work because of her depression" and had to consult a psychologist. *Id.*

26

damages for mental anguish by the jury, which the district court reduced to

$300,000.00 pursuant to 42 U.S.C. § 1981a(b)(3)(D). *Id.* The plaintiff's evidence on

this issue was the following testimony:

> [i]t destroyed me. It totally ruined me, and I become sick, totally ill, physically, mentally, and everything. I took many doctors, many pills. I did not know what to do, where to go, what to say. I did not know whether it was nighttime or daytime. I could not sleep for months at a time. Headache, nausea. Still I am under severe doctor surveillance because of what they have done to me[.]

*Id.* at 377.

The Fifth Circuit found that the plaintiff's testimony "was sufficient to

support a finding of actual injury," but concluded that the jury award was "entirely

disproportionate to the injury sustained." *Id.* at 377-378. The Fifth Circuit noted

that there was no medical evidence presented, nor was there any corroborating

evidence to support the plaintiff's testimony, and found "that an award greater than

$10,000 would be excessive." *Id.* at 378. Accordingly, it remanded the case for a new

trial on damages unless the plaintiff accepted a remitted damages award of

$10,000.00. *Id.*[11]

Here, Plaintiff testified that she suffered similar physical manifestations of

emotional distress, including depression and aggravation of her migraines, TMJ,

and intestinal problems. *Id.* at 377; Trial Tr. Vol. III, at 81-83. Like the plaintiff in

*Vadie*, Plaintiff relied primarily on her own uncorroborated testimony of these

---

[11] *Vadie* did not apply the 50% enhancement, but the Fifth Circuit has cited and relied on this case in applying the maximum recovery rule and the 50% enhancement in employment discrimination cases. *See Thomas*, 297 F.3d at 369 (considering *Vadie* in applying the maximum recovery rule to a plaintiff's Title VII verdict); *see also Longoria*, 932 F.3d at 365 (explaining how the maximum recovery rule is applied in cases tried by a jury).

issues to establish damages, and presented no medical evidence. *Vadie*, 218 F.3d at 377; Trial Tr. Vol. II, at 134-35; Trial Tr. Vol. III, at 81-83. Plaintiff offered vague testimony that she needed to take medication for her depression, *Vadie*, 218 F.3d at 377; Trial Tr. Vol. III, at 83, and this testimony was not corroborated by any medical evidence[12] or witness testimony,[13] *see Vadie*, 218 F.3d at 377. On similar facts, the Fifth Circuit in *Vadie* remitted the plaintiff's compensatory damages award for emotional distress from $300,000.00 to $10,000.00 in July 2000. *See Vadie*, 218 F.3d at 378. The Court finds this to be the highest award in a factually analogous case. When adjusted for inflation to the time of the trial in June 2021, this amount comes to $15,723.15.[14] Under the maximum recovery rule, the Court is required to add 50% to this figure, which equals a total of $23,584.72. Accordingly, the Court finds that the jury's compensatory damages award was excessive and should be remitted from $300,000.00 to $23,584.72 under the maximum recovery rule. Plaintiff may accept this amount or elect a new trial on damages.[15]

---

[12] Plaintiff argues that there is medical evidence to support her testimony in the form of a health questionnaire she submitted to MDOC, which confirms that she suffered from migraines, TMJ, and IBS prior to April 28, 2016. *See* Mem. [130] at 14 (citing Def.'s Ex. 14.). This document does not corroborate Plaintiff's testimony because it was prepared before Davis's harassment occurred and cannot support her statements that these conditions were aggravated by Davis's harassment.

[13] Plaintiff contends that her testimony was also corroborated by Candice Stewart. Mem. [14] at 15 (citing Trial Tr. Vol. III, at 120). Ms. Stewart testified that Plaintiff was stressed and cried at work, but she never addressed Plaintiff's medical manifestations of emotional distress. *See* Trial Tr. Vol. III, at 120.

[14] *See* Bureau of Labor Statistics's CPI Inflation Calculator, available at https://data.bls.gov/cgi-bin/cpicalc.pl.; *Puga*, 922 F.3d at 298 n.12 (using this calculator to make inflation adjustments).

[15] Although neither dispositive nor controlling, the Court notes that in a previous Title VII case tried to a jury in this District, *Canaski v. Mid Miss. Props.*, No. 1:15-cv-344-HSO-JCG (S.D. Miss. Feb. 15, 2017), one plaintiff alleged that her supervisor sexually assaulted her. Compl. [1] at 5. The jury in *Canaski*, awarded this plaintiff $15,000.00 in past and future compensatory damages for her mental anguish. Jury V. [67].

### III.  <u>CONCLUSION</u>

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Mississippi Department of Corrections's Renewed Motion [127] for Judgment as a Matter of Law is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Mississippi Department of Corrections's alternative Motion [127] for a New Trial or Remittitur is conditionally **GRANTED**, and that on or before April 29, 2022, Plaintiff Sarah Underwood may either accept a remitted compensatory damages award of $23,584.72, or elect a new trial on damages.

**SO ORDERED AND ADJUDGED**, this the 29th day of March, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE